UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DENNIS BRIAN MALAGA,

       Petitioner,

v.

Case No. 1:07-cv-97
Hon. Gordon J. Quist

CAROLE HOWES,

       Respondent.

_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

**I.    Background**

This case involved a home invasion that occurred in Farmington Hills, Michigan on October 11, 2002. Petitioner was charged with three crimes arising from the incident: Count I, first degree home invasion M.C.L. § 750.110a(2); Count II, unauthorized possession or use of a financial transaction device, M.C.L. § 750.157n(1); and Count III, operating without a valid driver's license, M.C.L. § 257.301. Plea Trans. at p. 3 (docket no. 13). In addition, petitioner was charged as a second habitual offender, M.C.L. § 769.10. *Id.* On November 19, 2002, petitioner pled guilty to Counts I and II, in exchange for the dismissal of Count III and the entry of a *Cobbs* agreement.[1] *Id.*

---

[1] A "*Cobbs* agreement" refers to *People v. Cobbs*, 443 Mich. 276, 505 N.W.2d 208 (1993), in which "the Michigan Supreme Court authorized a particular type of plea agreement wherein a judge states the appropriate length of sentence, which is non-binding, but if the defendant subsequently pleads guilty, that defendant retains the absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation." *Wright v. Lafler*, 247 Fed.Appx. 701, 703, fn. 1 (6th Cir. 2007).

at 3-15. During the course of plea, the court: advised petitioner of the maximum penalties for the charged crimes; confirmed the terms of the plea agreement; advised petitioner of his right to have a jury trial, his presumption of innocence, his right to have witnesses appear on his behalf, his right to question all witnesses against him, and his right to remain silent; and confirmed that petitioner understood that a guilty plea resulted in a conviction. *Id.* at pp. 3-9. The court also elicited testimony from petitioner: that his plea was made freely, understandingly, and voluntarily; that no promises have been made to induce the plea other than those stated on the record; that there has been no undue influence, compulsion, duress or threats used against petitioner to force him to plead guilty; and that it was petitioner's own choice to plead guilty. *Id.* at pp. 9-10. The court also advised petitioner that "any appeal from a conviction and sentence pursuant to a plea will be by application for leave to appeal and not by right." *Id.* at p. 10.

Petitioner testified to the following facts in support of the plea: he went to the victim's house looking for some gas; he knocked on the door; when no one answered, he went into the attached garage without permission; he took a purse from a car in the garage; he left the premises; and then he used a credit card from the purse to purchase gas. *Id.* at pp. 10-14. During the course of petitioner's testimony, an issue arose as to whether the house was occupied at the time of the crimes. *Id.* at pp. 12-13.

The crime of first degree home invasion, as charged against petitioner, required that the home be occupied at the time of the offense:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if

> at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
>> (a) The person is armed with a dangerous weapon.
>>
>> (b) <u>Another person is lawfully present in the dwelling</u>.

M.C.L. § 750.110a(2) (emphasis added).

> When asked by the prosecutor whether the victim was present when petitioner entered, was present in or exited the dwelling, petitioner stated as follows:
>
>> I don't know. I knocked on the door, I got no answer.

Plea Trans. at p. 12. The court advised that parties that petitioner's testimony was deficient for purposes of the plea (i.e., "it doesn't qualify unless, unless there was someone in the home"). *Id.* at pp. 12-13. Initially, defense counsel stated that he could not stipulate that the victim was present in the dwelling. Plea Trans. at pp. 12-13. In response, the prosecutor advised the court that the victim would testify that she was in the home at the time and that her presence was reflected in the police report. *Id.* at p. 13. Petitioner and defense counsel held an off the record discussion, after which defense counsel stated as follows:

>> For purposes of this plea, we would stipulate that if called to testify, she [the victim] would testify she was present and we have no -- there would be no evidence to contradict that, so we would stipulate that she was present.

*Id.* at pp. 13-14. Based upon petitioner's testimony and the stipulation, the court found petitioner's guilty plea to be understanding, voluntary and accurate, and accepted the plea. *Id.* at pp. 14-15.

> On December 3, 2002, the court sentenced petitioner to 6 to 30 years imprisonment for the home invasion and 4 to 6 years imprisonment on the unauthorized use of a financial transaction device, to be served concurrently. Sent. Trans. at p. 6 (docket no. 14). There is no record that petitioner filed an application for leave to appeal his conviction in the Michigan Court

of Appeals.[2] According to petitioner, on January 17, 2003, the trial court appointed Attorney Daniel Shanahan to represent him on the appeal, that Attorney Shanahan advised petitioner "to dismiss his appeal for lack of merit," and that petitioner "declined" Attorney Shanahan's offer to file the necessary dismissal papers. *See* Delayed application for leave to appeal to the Mich. Ct. App. at ¶ 4 (docket no. 15). The state court docket sheet reflects that the court appointed an attorney to represent petitioner on January 21, 2003, that a notice of appeal was filed on that date, and that the court granted defense counsel's motion to withdraw on June 26, 2003. *See* Oakland County Cir. Ct. docket sheet (docket no. 12).[3]

According to petitioner, he requested substitute appellate counsel and the court appointed Attorney Lawrence J. Bunting as his new counsel. Delayed application for leave to appeal to Mich. Ct. App. at ¶ 5. Petitioner's account is consistent with the state court docket sheet, which reflects that the court appointed petitioner an attorney on July 3, 2003. *See* Oakland County Cir. Ct. docket sheet. Once again, petitioner was not satisfied with his appointed appellate counsel. In a letter to the trial court dated September 17, 2003, petitioner complained that Attorney Bunting's proposed application for leave to appeal to the Michigan Court of Appeals was a "frivolous canned pleading." *See* Malaga Letter (Sept. 17, 2003) (docket no. 16).[4] The trial court subsequently granted Attorney Bunting's motion to withdraw as appellate counsel on November 26, 2003. *See*

---

[2] The Rule 5 materials do not include a transcript from the Michigan Court of Appeals regarding an application for leave to appeal the conviction and sentence. Petitioner admits he did not file an appeal. See discussion, *infra*.

[3] The docket sheet does not refer to Mr. Shanahan by name. However, by petitioner's account, Mr. Shanahan would be the only attorney who could have withdrawn at this time.

[4] A copy of the letter is one of several documents attached to petitioner's application for leave to appeal to the Michigan Supreme Court.

4

Order (docket no. 16). At the time Mr. Bunting withdrew, petitioner "had only 8 days left on the 12 month deadline to appeal to the Michigan Court of Appeals." Delayed application for leave to appeal to Mich. Ct. App. at ¶ 7. While petitioner states that he made a "subsequent request" to the court for appointment of a third appellate attorney, *id.* at ¶ 6, the state court docket sheet does not reflect such a request.

More than one year later, on November 29, 2004, petitioner filed a motion for relief from judgment, asserting that he was denied effective assistance of counsel "when trial counsel stipulated to the occupation of the home where [petitioner] had stolen a purse." *See* Opinion and Order at p. 3 (April 13, 2005) (docket no. 15). Petitioner argued "that he did not agree to stipulate to that element of the offense, and that was no evidence to support the occupation [of the home]." *Id.* The trial court denied the motion, after determining that petitioner had failed to supply any credible evidence that the house was unoccupied; failed to identify a meritorious claim for appeal; failed to demonstrate ineffective assistance of appellate counsel; and failed to establish good cause to grant relief from the conviction. *Id*. The court further found that petitioner was not prejudiced, because his guilty plea was voluntary. *Id.* at pp. 3-4. The court also denied petitioner's motion for reconsideration. *See* Opinion and Order (Aug. 12, 2005) (docket no. 16).

Petitioner filed a delayed application for leave to appeal this ruling to the Michigan Court of Appeals, raising the following issues:

> I.    Did the trial court violate [petitioner's] due process rights in the first degree home invasion plea hearing by failing to determine whether [petitioner] understood and consented to counsel's stipulation that the home was occupied during the offense, where [petitioner's] testimony that he "knocked on door but got no answer" did not establish [the] charged offense?
>
> II.    Was [petitioner] denied his right to the effective assistance of counsel where:

A. Counsel stipulated to material facts without [petitioner's] knowledge and consent.

B. Counsel failed to investigate conflicting statements regarding the whereabouts of house occupants, where a police report indicates that victim did not become aware of offense until after she was contacted by police.

C. Counsel's erroneous advice to plead guilty in exchange for dismissal of "operating without a license" charge, rendered [petitioner's] plea involuntary and unknowing, where counsel failed to realize that [petitioner] had a valid driver's license and instead allowed prosecutor to use bogus charge as bargain chip?

III. Did petitioner meet the cause and prejudice requirement of MCR 6.508(D)?

Delayed application for leave to appeal (docket no. 15).

The Michigan Court of Appeals dismissed the delayed application to appeal for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Dennis Brian Malaga*, No. 267058 (Mich. App. June 22, 2006). Petitioner raised the same three issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied because petitioner failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). *People v. Dennis Brian Malaga*, No. 131827 (Mich. Nov. 29, 2006).

Malaga filed a petition in this court seeking habeas relief on the following grounds:

I. Trial court violated [petitioner's] XIV Amendment Due Process rights.

In first degree home invasion plea hearing by failing to determine whether [petitioner] understood and consented to Counsel's stipulation that the home was occupied during offense, where [petitioner's] testimony that he "knocked on door but got no answer" did not establish charged offense.

II. [Petitioner's] Constitutional right to effective assistance of counsel, U.S Const, Ams. VI, XIV were violated.

> A. Counsel stipulated to material facts without [petitioner's] knowledge and consent.
>
> B. Counsel failed to investigate conflicting statements regarding the whereabouts of house occupants, where a police report indicates that victim did not become aware of offense until after she was contacted by police.
>
> C. Counsel's erroneous advise to plead guilty in exchange for dismissal of "operating without a license" charge, rendered [petitioner's] plea involuntary and unknowing, where counsel failed to realize that [petitioner] had a valid driver's license and instead allowed prosecutor to use bogus charge as bargain chip.
>
> III. [Petitioner] met the cause and prejudice requirement of MCR 6.508(D).
>
> November 26, 2003 appointed appellate counsel was allowed to withdraw from case. No other substitute attorney was appointed, even though [petitioner] did request substitution.

Petition (docket no.1).

## II. Procedural Default

Respondent contends that petitioner's habeas claims are barred by the doctrine of procedural default. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule

that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Here, petitioner did not file a direct appeal from his conviction and sentence. The Oakland County Circuit Court was the first state court to review petitioner's habeas claims, which were raised in his motion for relief from judgment under MCR 6.500 *et seq*. Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's application for leave to appeal the trial court's order denying post-judgment relief because he failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). The failure to meet the requirements of MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Canty v. Cason*, No. 02-2030, 2003 WL 152322 (6th Cir. Jan. 16, 2003); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). Consequently, a habeas petitioner's claims are procedurally defaulted in those cases in which the Michigan Supreme Court expressly relies on MCR 6.508(D) in denying an application for leave to appeal. *Id.* As the last state court rendering judgment in the case, the Michigan Supreme Court's decision denying petitioner's claims on the basis of the state procedural bar of MCR 6.508(D) prevents habeas review of his claim. *See Burroughs*, 282 F.3d at 414; *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000). Accordingly, all of petitioner's claims are barred by this procedural default.

To excuse the procedural default, petitioner must demonstrate the existence of cause for the default and actual prejudice arising from the default. *Coleman*, 501 U.S. at 750. "[T]he

8

existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Here, petitioner asserts that cause exists for this procedural default, because his appointed appellate counsel was allowed to withdraw and the trial court did not appoint substitute appellate counsel. Petition at p. 10. Petitioner's contention is without merit.

At his sentencing, the trial court advised petitioner that he was entitled to file an application for leave to appeal, and if he was financially unable to retain a lawyer to file an application, he could request the appointment of a lawyer to represent him on appeal. Sent. Trans. at pp. 6-7. According to petitioner, the court appointed him two different appellate attorneys, both of whom withdrew after petitioner refused to follow their advice. Petitioner admits that he had eight days left to file a timely application for leave to appeal to the Michigan Court of Appeals.

A preliminary question for the court is whether petitioner was entitled to be represented by appellate counsel when he sought application for leave to appeal his conviction and sentence to the Michigan Court of Appeals. At the time that petitioner pled guilty, the applicable statute, M.C.L. § 770.3a provided that a "defendant who pleads guilty, guilty but mentally ill, or nolo contendere shall not have appellate counsel appointed for review of the defendant's conviction or sentence."[5] M.C.L. § 770.3a required the trial court to appoint counsel for such an indigent defendant if any of the following applied:

(a) The prosecuting attorney seeks leave to appeal.

---

[5] M.C.L. § 770.3a was effective as of April 1, 2000. *See* P.A. 1999, No. 200. The statute was in effect when petitioner pled guilty, but was repealed effective January 9, 2007. *See* P.A. 2006, No. 655, § 1.

(b) The defendant's sentence exceeds the upper limit of the minimum sentence range of the applicable sentencing guidelines.

(c) The court of appeals or the supreme court grants the defendant's application for leave to appeal.

(d) The defendant seeks leave to appeal a conditional plea under Michigan Court Rule 6.301(C)(2) or its successor rule.

M.C.L. § 770.3a(2)(a)-(d).

The statute also provided that the trial court "may" appoint appellate counsel for such an indigent defendant if:

(a) The defendant seeks leave to appeal a sentence based upon an alleged improper scoring of an offense variable or a prior record variable.

(b) The defendant objected to the scoring or otherwise preserved the matter for appeal.

(c) The sentence imposed by the court constitutes an upward departure from the upper limit of the minimum sentence range that the defendant alleges should have been scored.

M.C.L. § 770.3a(3)(a)-(c).

Petitioner's situation did not involve the mandatory appointment of appellate counsel pursuant to M.C.L. § 770.3a(2)(a)-(d). In addition, petitioner did not have a constitutional right to appellate counsel to represent him on this discretionary appeal.[6] Although not required, the trial

---

[6] The court notes that this result is not changed by the Supreme Court's decision in *Halbert v. Michigan*, 545 U.S. 605 (2005), which held that the Equal Protection and Due Process clauses require the appointment of counsel for indigent defendants seeking first-tier review of plea-based convictions in the Michigan Court of Appeals, even when such appeals are discretionary rather than as of right. *Halbert*, 545 U.S. at 609-10. Under this rule, the trial court would be required to appoint counsel to represent all defendants appealing plea-based convictions, contrary to the provisions of M.C.L. § 770.3a. The question becomes whether the *Halbert* decision is applicable to petitioner. It is not. Petitioner was sentenced on December 2, 2002 and his conviction became final on December 2, 2003. *See Jagodka v. Lafler*, 148 Fed. Appx. 345, 346 (6th Cir. 2005) (where petitioner pled no contest to various charges, his convictions were finalized "one year after sentencing, when the time limit for filing a direct appeal in state court expired" pursuant to MCR 7.205(F)(3)); *Pardee v. Bauman*, No. 2:09-cv-68, 2009 WL 3823909 at *4 (W.D. Mich.

court appointed petitioner not one, but two attorneys to assist him in filing an application for leave to appeal his conviction to the Michigan Court of Appeals. Petitioner disregarded the advice of both of these appellate attorneys, which the court provided to him at public expense. Under these circumstances, in which petitioner had neither a statutory nor a constitutional right to appointed counsel, he cannot claim that the ineffective assistance of appellate counsel constituted "cause" for his procedural default. *See Coleman*, 501 U.S. at 752 ("where there is no constitutional right to counsel there can be no deprivation of effective assistance"); *Nichols v. United States*, 563 F.3d 240, 248 (6th Cir. 2009) ("the Constitution does not entitle a defendant to the assistance of counsel for a discretionary appeal"). Similarly, the withdrawal of appellate counsel during the course of a discretionary appeal does not constitute cause for purposes of a procedural default. *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004) (where petitioner's retained appellate counsel withdrew after filing appeal in Ohio Court of Appeals, petitioner's *pro se* status was not cause for a procedural default, which resulted from petitioner's failure to file a timely application for leave to appeal to the Ohio Supreme Court).

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

---

Nov. 13, 2009) (petitioner pled guilty and was sentenced on October 10, 2002; when petitioner failed to file the application for leave to appeal within one year of his conviction and sentence as prescribed by MCR 7.205(F)(3), his conviction became final on October 10, 2003). The Supreme Court decided *Halbert* on June 23, 2005, more than 1 1/2 years after petitioner's conviction became final. In *Simmons v. Kapture*, 516 F.3d 450, 451 (6th Cir. 2008) (*en banc*), the Sixth Circuit held that the new rule announced in *Halbert* did not apply retroactively to cases on collateral habeas corpus review.

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. In the procedural default context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623-24 (1998). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324. "Actual innocence" means factual innocence, not mere "legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). The actual innocence exception articulated in *Schlup* "is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (internal quotation marks omitted). Petitioner offers no such new, reliable evidence that he is actually innocent of the crimes for which he was convicted. Accordingly, petitioner's procedural default precludes review of his habeas claims.

### IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: December 22, 2009   /s/ Hugh W. Brenneman, Jr.
                            HUGH W. BRENNEMAN, JR.
                            United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).